[Civ. No. 1846. Third Appellate District.—April 22, 1918.]

## FRED WENTLAND et al., Appellants, v. CLARK & HENERY CONSTRUCTION COMPANY (a Corporation), Respondent.

STREET LAW—PROCEEDINGS UNDER IMPROVEMENT ACT OF 1911—DOING OF WORK BY PROPERTY OWNERS—DUTY AS TO AWARDING OF CONTRACT.—Under the part of section 12 of the Street Improvement Act of 1911 (Stats. 1911, p. 730), providing that the owners of three-fourths of the lots liable to be assessed may within ten days after the first publication of the notice of award of contract elect to take said work and enter into a contract for the doing of the same, and that if they fail to so elect the superintendent of streets shall enter into a contract with the person to whom the contract was awarded, when the board of trustees makes its award, its powers and duties in respect to the letting of the contract cease, and it then becomes the duty of the superintendent of streets to enter into the contract, and a notice given by the property owners to the trustees within the ten days confers no rights upon the property owners nor imposes any duty upon the trustees.

ID.—TIME OF COMPLETION OF CONTRACT—MISTAKE IN RECORDING CONTRACT—VALIDITY OF LIEN UNAFFECTED.—A lien for street work done under the Improvement Act of 1911 is not invalid because of an error in copying into the record kept by the superintendent of streets that the contract was to be completed within 80 days, the original contract on file calling for 180 days, since the lien existed before the making of the record.

ID.—PLANS FOR WORK—ERRONEOUS STATEMENT OF FRONTAGE—VALIDITY OF ASSESSMENT UNAFFECTED—REQUIREMENTS OF SPECIFICATIONS.—An assessment for work done under the Improvement Act of 1911 is not invalid for the reason that the plans which accompanied the specifications indicated an erroneous frontage as to some of the property owners, where the specifications and resolution of intention did not call for the improvement of a certain number of feet in front of each lot, but for the improvement of the street between certain stated points.

APPEAL from a judgment of the Superior Court of San Joaquin County. J. A. Plummer, Judge.

The facts are stated in the opinion of the court.

Walter R. Dunn, for Appellants.

White, Miller, Needham & Harber, for Respondent.

CHIPMAN, P. J.—This is an action to quiet title from a street assessment with a cross-complaint by defendant for moneys claimed to be due under the assessment.

There were three cases set down in the trial court at the same time for trial—the present case, No. 1846, and the case of *Lillie* v. *Clark & Henery Construction Co., post,* p. 815, [173 Pac. 483]. In the third case Ann M. Phillips is plaintiff and is here on appeal in No. 1846. The trial court directed "that the evidence introduced, so far as the same is applicable, shall be considered as directed to the case to which the testimony may be pertinent as it may be introduced." At the hearing here, counsel addressed themselves to *Wentland et al.* v. *Clark & Henery Construction Co.,* [173 Pac. 480], with the understanding that the points involved were the same as in No. 1845, and should embrace the case in which said Phillips is plaintiff. Judgment went for defendant and cross-complainant.

The appeal is from the judgment and is by plaintiffs Fred Wentland and Ann M. Phillips.

The city of Lodi, a city of the sixth class, by its city council, on October 9, 1914, adopted plans and specifications and passed a resolution of intention to grade, pave, and gutter three blocks of Pine Street in said city "from the center line of Garfield Street to the easterly city limits." The contract for the work was duly awarded to defendant on November 18, 1914, and publication of notice thereof duly given and made on November 20, 1914. Certain of the owners of lots fronting on that part of Pine Street to be improved, among the number appellants Wentland and Phillips, decided to take over the proposed work themselves. A daughter of one of the interested parties telephoned on their behalf to the superintendent of streets, Coleman, within ten days after the contract was awarded to respondent, informing him of their intention and requesting information as to the necessary procedure. He answered that he could do nothing for them.

Witness Fleming, one of the property owners, testified that he had a conversation with Mr. Coleman, street superintendent, two or three days prior to November 30, 1913, and was asked what the conversation was: "I asked him for plans and specifications for to figure on, told him we were to take over the paving and do it ourselves; and he said he didn't have any, couldn't furnish me any. He says, 'By the way, I

have some specifications for curbing that I made myself.  I can furnish them to you,' and he also gave them to me; and that was practically all there was said.  Q. Did you or did you not at that time tell him whether or not you wanted to take over the contract?  A. I told him we were figuring on it, to take it over, and we wanted those plans and specifications to figure on, to know what we were to do.  Q. Did you afterward have any conversation with him after that, in regard to it?  A. I did not.  Q. Ever go to see him?  A. I don't think I did.''  No further notices were given to the superintendent of streets and no other requests were made to him.  Counsel for plaintiff offered to prove by this witness that on November 30, 1914, the property holders went before the board of trustees ''and then and there told the board of trustees they were there for the purpose of taking over the contract for the performance of this work, and that the board of trustees told them they were too late, and refused to let them have the contract.''  The offer was objected to as immaterial, irrelevant, and incompetent and the objection was sustained.  Counsel for defendant moved ''to strike out the testimony of the witness concerning the conversation between him and the superintendent of streets, Coleman, as being irrelevant and immaterial.''  The Court: ''I can state right from the bench with regard to testimony of that kind, it is not sufficient in legal effect to justify the court in taking any action on it.  Now, whether any testimony will be introduced upon which the court could take action, I cannot say until I have heard all the testimony.''  No further testimony was offered by plaintiffs.  The remaining evidence consisted of copies of certain of the proceedings in the matter of letting the contract, namely: The contract and the contractor's bond; certificate of the engineer; assessment; contractor's return; diagram; warrant; street superintendent's certificate; plans and resolution of intention.

It should be noted that plaintiffs made the following offer: ''Mr. Dunn (plaintiff's attorney) : We want to prove by this witness (Mr. Coleman), the superintendent of streets, after the recording of this assessment, did not keep his office open during business hours, between the fourteenth day of—after recording the instrument—until the expiration of the thirty

days within which the property holders were required to appeal to the board of trustees. Mr. White: To which offer I object as incompetent, irrelevant, and immaterial, on the ground that the property owner, or any citizen has, or any party interested, has an entirely different mode of relief if a public officer don't keep his office open. The Court: The objection is sustained. We are not trying Mr. Coleman as to whether he has innocently rendered himself liable for damages by failure to keep his office open during business hours. Mr. Dunn: That is all."

1. The point principally urged by appellants is, that it was the duty of the board of trustees, in response to the notice given them by the property owners, to direct the street superintendent to let the contract to them. The work in question was being done under the Improvement Act of April 7, 1911 (Stats. 1911, p. 730). Section 12 of the act reads, in part, as follows: "The owners of three-fourths of the frontage of lots and lands liable to be assessed, or their agents, and who shall make oath that they are such owners or agents, shall not be required to present sealed proposals or bids, but may, within ten days after the first publication of said notice of said award, elect to take said work and enter into a written contract to do the whole work at the price at which the same has been awarded. . . . "

The section provides that "should the said owners fail to elect to take said work, and to enter into a written contract therefor within ten days . . . it shall be the duty of the superintendent of streets to enter into a contract with the original bidder to whom the contract was awarded, and at the prices specified in his bid." The section does not specifically indicate to what officer or body the application of the owners must be made. Appellants claim, however, that "it may easily be drawn from section 13 that in letting a new contract, the city council must disregard further election of the owners. In the absence of statutory direction to the contrary, the owners should have the right to make their election before either the city council or the superintendent of streets." Section 13 throws no light upon the question. It simply provides that "if such original bidder neglects, fails or refuses, for fifteen days after the first publication of the notice of award, to enter into the contract, then the city coun-

cil, without further proceedings, shall again advertise for proposals or bids," etc.

Section 18 provides as follows: "The superintendent of streets is hereby authorized in his official capacity, to make all written contracts, and to receive all bonds authorized by this act, and to do any other act, either express or implied, that pertains to the street department under this act," and setting forth sundry other powers and duties in respect of the contract.

When the board of trustees made its award, its powers and duties in respect of letting the contract ceased. It then became the duty of the superintendent of streets either to cause the contract to be entered into by the original bidder or with the property owners should they elect to take over the work. The statute confers this power and duty upon him, acting, of course, in his official capacity, and it was not necessary for the board of trustees to take further action unless there was a failure on the part of the original bidder to enter into the contract, in which case the city council, under section 13, was directed to "again advertise for proposals or bids." The notice given by the property owners to the board of trustees conferred no rights upon them nor did it impose any duty upon the board of trustees. Somewhat similar provisions to those in the Improvement Act are found in the act of 1889 (Stats. 1889, p. 162). In *Fairchild* v. *Wall*, 93 Cal. 401, [29 Pac. 60], the superintendent of streets entered into a contract with the property owners after an award had been made to plaintiff. *Mandamus* was sought by plaintiff to compel the city council to enter into a contract with the plaintiff for the work. The writ was denied. As we understand that case, the superintendent of streets let the contract to the property owners without further authority than that conferred by the statute and without any action on the part of the city council other than making the award in the first instance.

Appellants do not rely, nor do we think under the facts shown they could rely, upon the notice given to the superintendent of streets. Their reliance is upon their construction of the statute that upon the election of the property owners being made known to the board of trustees, it became the duty of that body to award the contract to the property owners and to direct the superintendent of streets to enter

into the contract for the work with them.   We cannot agree with appellants in their construction of the statute.

2. In copying the contract into the record kept by the superintendent of streets, it was stated that the time for the completion of the contract was within eighty days.   Concededly, the work was not completed within that time but was completed within 180 days.   Defendant introduced the original contract which showed that the time of completion was within 180 days and the superintendent of streets testified that a mistake was made in copying it into the record.   The original contract was on file in his office with other records and was open to inspection, as were other records.   The mistake in recording the contract did not affect the lien, for the reason that under the provisions of the Improvement Act of 1911, a lien exists before the making of the record.   Plaintiffs must have known of the terms of the award, and in offering to do the work on such terms they must have known the price to be paid.

It was held under the "Vrooman Act," section 10 (Stats. 1885, p. 155), that a failure to record the contract will not prevent recovery.   (*Perine* v. *Lewis,* 128 Cal. 236, [60 Pac. 422, 772].)

3. It is claimed that the assessment is invalid for the reason that the plans which accompanied the specifications for the work indicated that the frontage of plaintiff Wentland's lot was 155.5 feet and that the record of the assessment shows but 152 feet.   Also, that in the case of the assessment of Ann M. Phillips, the specifications showed that her lot had 286 feet frontage, whereas the assessment shows 294.51 feet.

The resolution of intention stated that the following work was to be done, to wit: "That Pine Street in said city between the center of Garfield Street and the easterly city limits be improved by grading the same . . . in accordance with the plans and specifications adopted therefor by the board of trustees of said city, October 9, 1914, to which said plans and specifications reference is hereby made for description of said work and further particulars."   No mention of lots is made.

The plans and specifications describe the work to be done the same as above, that is, Pine Street between the center of Garfield Street and to the easterly city limits.   The

plans attached to the specifications are made part thereof. The blue-print copy of the plans shows on its face that it is "Plan for improvement of East Pine Street, City of Lodi, California, between Garfield Street and the east city limits."

The court found that this blue-print "indicated that the lot belonging to Fred Wentland and which fronts on said street, had a frontage of 155.5 feet, and that the lot of plaintiff Ann M. Phillips, fronting on said street, had a frontage of 286 feet. In fact, the lot of Fred Wentland had a frontage of 152 feet and the lot of Ann M. Phillips had a frontage of 294.51 feet." The certificate of the city engineer states the whole amount each of the grading, paving, curbing, and gutters, assessment No. 4, as made by the superintendent of streets, shows that the assessment is upon certain lots fronting on Pine Street to the easterly city limits, amounting in all to $3,460.90, and showing "the number of the lot and the amount assessed thereon." Attached to his certificate is a diagram showing the entire line of the work and the lots fronting on Pine Street and the actual frontage of each on which the assessment was made. The Wentland assessment was on 152 feet, his actual frontage, and on 294.51 feet, the actual frontage of Ann M. Phillips' lot. It is not claimed that the entire work done was less than was certified to by the city engineer and superintendent of streets, and it is not contended that the actual frontage of the Phillips lot was less than that assessed. The specifications did not call for the improvement of a certain number of feet in front of each lot fronting on Pine Street or for any specified number of feet. They called for the improvement of the street between certain stated points—from Garfield Street to the easterly city limits, and it was not necessary to state in the specifications the frontage of each lot. The jurisdiction to do the work had its origin in the passage and publication and posting of the resolution of intention. Plaintiff Wentland has no cause for complaint, since he was assessed for less frontage than shown in the specifications and admittedly for his actual frontage. Nor can we see why plaintiff Phillips should escape payment because of the variance between the statement of an immaterial fact in the specifications and in the final certificate of the engineer of the actual length of the improved line of the street and the actual part of that line which was in

front of the Phillips lot. Defendant's obligation was to complete the work as designated in the resolution of intention and this, concededly, it has done. The law fixes the liability of the lot owner, and as no substantial right of any lot owner is shown to have been violated, the contractor should, pursuant to the statute, be paid for his work in accordance with his contract and the resolution of intention.

Section 26 of the act gives the right of appeal to the city council to all interested persons, if aggrieved, within thirty days after the date of the warrant, and the council is given power to "modify or correct the assessment in such manner as to them shall seem just," and the decision of the council is made final on all matters as to which an appeal is given. "No assessment, warrant, diagram or affidavit of demand and nonpayment, after the issue of the same, and no proceedings prior to the assessment, shall be held invalid by any court for any error, informality, or other defect in the same, where the resolution of intention of the council to do the work, has been actually published as herein provided, and said notices of improvement have been posted along the line of the work, as provided in section five of this act, before the passage of the resolution ordering the work to be done."

The law was fully complied with in these particulars. No appeal was taken by any of the property owners at any stage of the proceedings.

Appellants seek to excuse their failure to appeal on the grounds, first, that the defects pointed out appeared on the face of the record and no appeal was necessary as the property owner was not aggrieved, citing *Ryan* v. *Altschul,* 103 Cal. 174, 176, [37 Pac. 339], and, second, because "the record was inaccessible by reason of being locked up as hereinbefore mentioned, and which appellants offered to prove." We do not think the record shows any invalidity in the assessment on its face or at all. Plaintiffs called Mr. Coleman, superintendent of streets, and made the offer set forth in the early part of this opinion to which objection was sustained. It does not appear, nor did plaintiffs offer to show, that the superintendent of streets was inaccessible and could not be found, or, being found, refused to allow plaintiffs access to the records. Nor does it appear, nor was it attempted to be shown, that plaintiffs had not, or could not, obtain the information necessary to take an appeal; nor does it appear

that they had any intention to appeal, nor that they had any substantial grounds for appeal. On the contrary, as we have seen, the proceedings were regular and without substantial infirmity, and that an appeal, if taken, would have been unavailing.

We fail to discover error in the ruling of the court or that appellants were excused from taking an appeal to the board of trustees if they felt aggrieved.

The judgment is affirmed.

Burnett, J., and Hart, J., concurred.