[S. F. No. 12240. In Bank.—July 25, 1927.]

W. W. BLAKE et al., Appellants, v. THE CITY OF EUREKA (a Municipal Corporation) et al., Respondents.

[1] STREET LAW—STREET IMPROVEMENT ACT OF 1911—PROTEST—INJUNCTION.—An owner of property within an assessment district to be formed under the Street Improvement Act of 1911 cannot enjoin the city council from considering bids or awarding a contract for the construction of certain improvements on certain streets upon the ground that the cost of the improvement provided for in said proceedings would be in excess of the reasonable value of the land in the assessment district, where it does not appear from the complaint that any such objection was made to the city council.

[2] ID.—PROTEST ON CERTAIN GROUNDS.—A property owner who has duly filed a protest upon certain designated grounds to a street improvement and whose protest has been denied cannot thereafter, in a proceeding in court or otherwise, complain of the denial of his protest on grounds other than those set forth therein, nor can he upon grounds not stated in any protest maintain an action to restrain the work of said improvement.

1. See 19 Cal. Jur. 451.
2. See 19 Cal. Jur. 370.

[3] ID.—HEARING OF PROTESTS—PLEADING.—In a suit to enjoin proceedings for street improvement, a complaint that the council failed to hear evidence on the protests filed cannot be maintained where the complaint failed to allege that the protestants offered evidence in support of their protests or that the council had refused to hear such evidence, as the burden of proof was upon the protestants to prove the truth of their objections and without such evidence upon their part the council was under no obligation to hear evidence before denying the objections.

[4] ID. — BOUNDARIES OF DISTRICT — JURISDICTION OF COUNCIL. — The right to fix the boundaries of an assessment district is vested in the city council by section 4 of the act of 1911 and its determination thereof is conclusive.

[5] ID.—RULE OF COUNCIL—PETITION OF PROPERTY OWNERS—RULE NOT BINDING ON COUNCIL.—The fact that the city council, prior to the adoption of a resolution of intention to do certain street work, promulgated a rule that it would not improve any street unless petitions praying for said improvement were presented to it, signed by more than a majority of the property owners along said street or of the district to be affected thereby, did not prevent the council from proceeding without such a petition, as such a rule could be repealed at the pleasure of the council either by rescinding it or by taking action inconsistent with it.

[6] ID.—AGREEMENT OF COUNCIL TO LIMIT COST OF IMPROVEMENT—INVALIDITY OF.—A city council is without any authority at the time of the passage of a resolution of intention to do street work or at any other time either before or after the passage of the resolution to agree with any property owner or other person, either that his property shall be assessed in proportion to the benefits received from the improvement or that it will bear only a certain percentage of whatever the cost of the improvement is, as it is the duty of the superintendent of streets, or the city engineer if one has been designated by the council, to make the assessment and determine the amount each property owner shall pay for the improvement.

[7] ID.—EXEMPTION OF PUBLIC PROPERTY.—Where it appears that the city council acted in pursuance of the provisions of subdivision 8 of section 20 of the statute regarding the exemption of public property, its action is perfectly legal.

[8] ID.—CHARTER OF CITY OF EUREKA—APPLICATION OF STATE LAW—PROCEEDING BY RESOLUTIONS.—As the charter of the city of

4.  See 19 Cal. Jur. 368.

6.  See 19 Cal. Jur. 378.

7.  Liability of public property to special assessment, note, 16 Ann. Cas. 886; Ann. Cas. 1917D, 844. See, also, 19 Cal. Jur. 379.

Eureka contains no plan or scheme for the improvement of its streets like that contained in the state statutes, other than the usual and ordinary care of the streets, but makes the Improvement Act of 1911 applicable to street work in that city, it is legal for the city council to proceed in such work by resolution rather than by ordinance, as such action is authorized by said act.

[9] ID.—ASSESSMENT DISTRICT—OMISSION OF PROPERTY—SEWERS—FAILURE TO PROTEST.—The complaint that an assessment district does not include lots adjacent to and fronting on a street in which a sewer provided for in the improvement proceedings is to be laid, cannot be sustained where the objection was not contained in a written protest filed with the city council at or before the meeting when the resolution of intention was passed.

[10] ID.—PAST ACT—WHEN INJUNCTION DOES NOT LIE.—An injunction lies only to prevent threatened injury and has no application to wrongs which have been completed; and in a suit to enjoin the members of a city council from doing any act under resolutions of intention to do street work or in considering bids or awarding a contract for the construction of the improvement, where the complaint shows that the bids were considered and the contract awarded before the commencement of the action, no injunction will lie to prevent the city council from performing either of said acts.

---

(1) 28 Cyc., p. 989, n. 58.  (3) 4 C. J., p. 748, n. 60, p. 749, n. 84; 28 Cyc., p. 991, n. 78, p. 1021, n. 16.  (4) 28 Cyc., p. 1122, n. 16. (5) 28 Cyc., p. 959, n. 36.  (6) 22 C. J., p. 148, n. 67; 28 Cyc., p. 1133, n. 35.  (7) 28 Cyc., p. 1131, n. 13.  (8) 43 C. J., p. 283, n. 85, p. 295, n. 30, p. 296, n. 33; 28 Cyc., p. 978, n. 32.  (9) 28 Cyc., p. 1172, n. 98.  (10) 32 C. J., p. 75, n. 82; 28 Cyc., p. 1020, n. 1.

APPEAL from a judgment of the Superior Court of Humboldt County. W. V. Tryon, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. F. Coonan and G. A. Webb for Appellants.

J. W. Henderson for Respondents.

CURTIS, J.—This action was instituted for the purpose of obtaining an injunction restraining the members of the city council of the City of Eureka from further proceeding

---

10. See 14 Cal. Jur. 209; 14 R. C. L. 309.

under resolutions 199, 1591, and 1592, theretofore passed by said council, or from considering bids or awarding a contract for the construction of certain improvements of three streets of said city, mentioned and described in said resolutions. It is alleged in the complaint that the plaintiffs in said action are the owners of land within the assessment district proposed to be formed for the purposes of paying the costs of said improvements, and that all of said plaintiffs with the exception of William Kehoe are taxpayers and residents of said city. The defendants, so it is alleged in the complaint, are the City of Eureka, the members of the city council thereof and the Mercer-Fraser Company, a corporation, a construction company, who made the lowest bid for the construction of said improvements and to whom said city council awarded the contract for the improvement of said streets. The complaint sets up seven causes of action, all separately stated. The court sustained a general demurrer to each cause of action. It also sustained special demurrers to the first and sixth causes of action. The demurrers to the first, second, and sixth causes of action were sustained with leave to amend and the others were sustained without leave to amend. The plaintiffs failed to amend their complaint or any of the causes of action thereof within the time allowed by the court and judgment was entered dismissing said action. From this judgment the plaintiffs have appealed. The three resolutions above mentioned were passed and adopted by the city council in furtherance of proceedings taken by said council under the Street Improvement Act of 1911 (Stats. 1911, p. 730), and amendments thereto, to pave and otherwise improve three certain streets in said City of Eureka. Resolution 199 was the resolution of intention provided for by section 3 of said act. Resolution 1591 was the resolution ordering the work of said improvements to be done as provided for by section 10 of said act, and resolution 1592 was a resolution directing the work to be done under the direction of the city engineer and the assessment to be made by him as provided for by section 18 of said act.

In passing upon the several demurrers filed herein it will be necessary to consider the points raised by the appellants somewhat in detail and we will discuss them as they relate

to the several causes of action in the order set forth in the complaint.

[1] *First cause of action:* The ground of the special demurrer to the first cause of action was that the complaint alleged that the improvement mentioned in the resolution of intention in various places along Harris Street (one of the streets to be improved) was laid out upon private lands, but that it could not be ascertained from said complaint where or in what places said improvement was to be made upon private property. The demurrer was sustained and ten days given to amend. Plaintiffs failed to amend. There was no error in sustaining this demurrer. The only allegations in the first cause of action upon which an argument with any hope of success might be based in favor of plaintiffs' contention that said first cause of action states facts sufficient to constitute a cause of action are that the cost of the improvement provided for in said proceedings would be in excess of the reasonable value of the land in the assessment district and that the city council failed to hear evidence on the objections to said improvement made in numerous protests signed by some 254 property owners within the assessment district. We think, however, that a consideration of these allegations will show that their inclusion in the cause of action did not render the same invulnerable to a general demurrer. We will first consider the allegation that the cost of the improvement exceeded the reasonable value of the land benefited by the improvement. Section 6 of the Improvement Act of 1911 provides that at any time prior to the hour set for the hearing of protests any property owner liable to assessment for said improvement may make written protest against the proposed work. Section 7 of the same act provides that if no protests or objections are presented to the clerk of the city council or when a protest is filed the city council shall have overruled the same "immediately thereupon the city council shall be deemed to have acquired jurisdiction to order the proposed improvement." It does not appear from the complaint that any objection as to this excessive cost of said improvement was ever made to the city council, and the copies of the protests annexed to the complaint do not contain any such objection or any one similar thereto. Can plaintiffs now in an action to enjoin the city council from ordering the improvement raise

an objection which was not made by them or any of them in their written protests presented to the city council? If they can, then why the provision of the statute providing for the filing of written protests by the property owner with the city council? If a property owner at any stage of the proceedings to construct an improvement under said statute may by an action in court enjoin further work thereon without first complying with the statute providing for the filing of written protest, then the statutory provision requiring such protest is ineffective for any purpose whatever and can be disregarded with impunity by any property owner. As already mentioned, section 7 of the act provides that if no protests are filed, or if those filed are denied, the council immediately will be deemed to have acquired jurisdiction to order the proposed improvement. It has been held by this court in construing this statute that "If it (the city council) has duly disposed of the protests then as to all the world it has the power to proceed." (*Farley* v. *Reindollar*, 174 Cal. 703, 707 [165 Pac. 19].) It is further held in that case that a property owner who had failed to protest cannot object to the disposition of protests to which he was not a party. **[2]** We think it logically follows that a property owner who has duly filed a protest upon certain designated grounds and whose protest has been denied cannot thereafter, in a proceeding in court or otherwise, complain of the denial of his protest on other grounds than those set forth therein, nor can he upon grounds not stated in any protest maintain an action to restrain the work of said improvement. We think this question has been definitely settled by the following decisions of this court: *Duncan* v. *Ramish*, 142 Cal. 682, 696 [76 Pac. 661]; *United Real Estate etc. Co.* v. *Barnes*, 159 Cal. 242, 244 [113 Pac. 167]; *Cohen* v. *City of Alameda*, 183 Cal. 519 [191 Pac. 1110]. In the case of *United Real Estate etc. Co.* v. *Barnes, supra,* in construing a similar statute, this court said (page 244) : "No objections were made by the plaintiff, or by any other person, and after the time for the objections had expired the council ordered that the street be opened and appointed commissioners to assess the benefits and damages. The decision thus made by the council is conclusive upon the plaintiff. The case cannot be distinguished in this particular from *Duncan* v. *Ramish*, 142 Cal. 691 [76 Pac. 663], and the

numerous cases there cited. In that case the court said with respect to a similar objection: 'It is enough for the local property-owner that he has a right to be heard before the city council upon the question, by filing a petition of remonstrance in the proceeding prescribed by law, setting forth his reasons why the improvements should not be made. Upon this the council must decide the question, and its decision is final.' In the same case, speaking of an objection with respect to the size of an assessment district, it was further said: 'It must be held that the property-owner, having this right, must avail himself of it, or be concluded by the decision of the council.' The 'right' here referred to was the right to make objections to the extent of the assessment district. This case, it is true, arose under the Vrooman Act (Stats. 1885, p. 147) in a proceeding for paving or macadamizing a street, and not under the Street Opening Act (Stats. 1889, p. 70). But the legislative power of the state, exercised in both instances by the city council, is the same in one case as in the other, the provisions of the statute as to the proceedings in the council and the conclusive effect of its decisions are substantially the same and the same principles must apply.'' We think the same reasoning applies to the construction of the Street Improvement Act of 1911, and that plaintiffs cannot raise any objection in this action which they could have raised before the city council at the time provided by section 6 of said act for the hearing of protests, and which they failed to make by means of written protests filed as provided in said act.

[3] The other objection to which we have already referred, made in support of appellants' contention that the court erred in sustaining the general demurrer to the first cause of action, is that the city council failed to hear evidence on objections to said improvement made in the written protests filed by interested property owners. There is no allegation that the city council refused to hear such evidence, nor is there any allegation that any of said protestants offered to produce any evidence before said city council in support of their protest and which said city council refused to hear. The copy of the resolution overruling protests annexed to the complaint shows that ''All protests or objections were read to the Council and all of said protests or objections having been heard and duly considered

by the Council and the Council being fully advised in the premises and being required to pass upon said protests, it is hereby Resolved by the Council of the City of Eureka that all of said protests and objections against said proposed work or improvement be and the same are hereby overruled and denied.'' Plaintiffs do not allege that this resolution failed to set forth the true action of the council taken at its meeting when said protests were considered by it except that said city council "did arbitrarily and wilfully determine, as plaintiffs are informed and believe, that said protests represented less than one-half of the owners of the property to be assessed for said improvement, and did then and there by resolution Number 1590 (a copy of which is annexed, marked Exhibit D and made a part hereof) overrule and deny said protests.'' Aside from any binding effect this resolution may have upon plaintiffs by reason of the allegations of their complaint in reference thereto, we think that the failure of plaintiffs to allege that they offered any evidence in support of their protests and objections and their failure to also allege that the city council refused to hear such evidence renders the first cause of action deficient in a material respect. We may assume that this point was urged upon the trial court at the hearing of the demurrer. It will be noted that the order of the trial court overruling said demurrer gave to plaintiffs ten days within which to amend their first cause of action and that the plaintiffs failed to file any amendment or any amended complaint. We may further assume that had plaintiffs been able to cure this defect in this cause of action by alleging that they had offered to produce evidence in support of their protests and objections and that the city council had refused to hear such evidence, they would have done so by filing an amendment to their complaint alleging these facts. Having failed to so amend their pleadings, we feel that we are justified in concluding that they were unable to supply the missing allegations. The burden of proof was upon the protestants to prove the truth of their objections and without such evidence upon their part the city council was under no obligation to hear evidence before denying the same (*Ahlman* v. *Barber Asphalt Pav. Co.,* 40 Cal. App. 395, 403 [181 Pac. 238] ; *Lambert* v. *Bates,* 137 Cal. 676 [70 Pac. 777] ). There were further objections to said improvement alleged in the

first cause of action which were also properly made before the city council by means of written protests. These were to the effect that Harris Street was of varying widths along its course; that there were a number of gulleys in said street; that the land fronting thereon was sparsely settled and that the total number of buildings on either side thereof would not exceed 45; that the market value of the property in said district would be depreciated if said improvement is made; that the cost of said improvement would be at least $218,184.47, and that this expenditure was more than the property owners could pay. These protests were overruled by the city council and its decision thereon was final. "The theory upon which the district is established, upon which the cost of the work shall be apportioned, is that it will derive special benefits from the improvement. But someone must determine that question, and as stated, the legislature has seen fit to delegate such power to the city council. From this conclusion it follows that the allegations of the complaint to the effect that plaintiffs' property will not be benefited by the proposed improvement, cannot be considered in aid of the statement of a cause of action, since as to such question no evidence in support thereof would be admissible upon the trial (*Cake* v. *City of Los Angeles,* 164 Cal. 705 [130 Pac. 723]; *Duncan* v. *Ramish,* 142 Cal. 686 [76 Pac. 661])." (*Beale* v. *City of Santa Barbara,* 32 Cal. App. 235, 242 [162 Pac. 657]; *Rutledge* v. *City of Eureka,* 195 Cal. 404, 426 [234 Pac. 82].) The first cause of action makes certain allegations of the other causes of action a part of said first cause of action by reference to said allegations appearing in other causes of action of said complaint. These allegations, or such of them as we deem of sufficient importance to discuss, will be considered in our discussion of the separate causes of action of said complaint containing said allegations.

[4] *Second cause of action:* The objection to said improvement set forth in this cause of action is that the city council in determining the boundaries of said assessment district fixed the north boundary thereof at approximately 120 feet north of Harris Street and the south boundary line 2,640 feet south of said Harris Street. This objection was set forth in the protests filed with the city council. The right to fix the boundaries of the assessment district

by section 4 of the act of 1911 is vested in the city council, and we see no reason why the same rule should not apply to the action of the city council in fixing the extent and boundaries of the district as we have already seen applies to its action in deciding whether the property of any certain owner will be benefited by the improvement. In the case of *Beale* v. *Santa Barbara, supra,* the court said (page 242) : "The position of counsel for appellants, as announced at the hearing, was to the effect that whenever a city council declares its intention to make street improvements, and likewise its intention to establish an assessment district upon which to apportion the cost of such improvement, any dissatisfied property owner therein, upon a claim that his property will not be benefited, may demand a hearing in court and thus obstruct the proposed improvement until a determination of such question by the court. As stated in *Paulson* v. *City of Portland,* 16 Or. 450 [1 L. R. A. 673, 19 Pac. 450], such a course would hardly be practicable, and would result in substituting in place of the judgment of the common council, who are selected on account of their supposed fitness for that duty, the opinion of a multitude of witnesses, many of whom would be personally interested in the controversy. Says Hamilton on Special Assessments, section 515: 'The determination of the assessing board as to what property is benefited and the extent of such benefit, when made in accordance with statutory requirements, is conclusive, in the absence of fraud or mistake.' " There may have been good and sufficient reasons why the district was extended only 120 feet north of Harris Street and was extended 2,640 feet south of said street. The relation of Harris Street to the land situated on either side thereof may furnish a satisfactory and reasonable explanation for fixing the boundaries of the district so that the greater portion thereof would lie to the south of said street and a less portion to the north thereof. It must be presumed that the members of the city council were familiar with the conditions prevailing in the proposed assessment district and that in fixing its boundaries they were governed by such existing conditions. Some body or tribunal must determine the extent and limitations of the district, and, as we have already seen, the legislature has provided that such power shall be exercised by the city council.

*Third cause of action:* The objection alleged in this cause of action as grounds for invalidating the proceedings taken by the city council to make said improvement may, for the sake of convenience, be divided into three classes:

[5]   First: Those allegations directed against the action of the city council to the effect that said city council had, prior to the adoption of said resolution of intention, promulgated a rule that it would not improve any street in said city unless petitions praying for said improvement were presented to it, signed by more than a majority of the property owners along said street or of the district to be affected thereby; that no petition had been presented for the improvement of the streets mentioned in said resolution of intention, and that notwithstanding that no such petition had been presented to said city council, said city council passed said resolution of intention.

[6]   Second: Those allegations to the effect that an employee of the Mercer-Fraser Company circulated a petition for the construction of said work on Harris Street, in which petition there was contained the following clause: "We also request the City Council to create a district to be assessed for the cost and expense of the improvement according to the benefit derived, the assessment against the property fronting upon Harris Street not to exceed sixty per cent of the cost of the improvement"; that said petition was signed by property owners representing about forty-six per cent of the property fronting on Harris Street and was presented to the said city council; that the city council "approved said petition and granted the petition of said property owners without change or qualification and thereupon ordered plans and specifications to be prepared for said work, and thereafter in pursuance of said agreement, passed said Resolution of Intention No. 199."

Third: Those allegations exempting public lands within said district from the payment of any part of the cost and expense of said improvement as provided by subdivision 8 of section 20 of said Street Improvement Act.

As to the allegations in class 1, we think but little need be said. Any rule that the city council might promulgate adopting a policy regarding improvement of streets may be repealed at the pleasure of the council. This could be done directly by the city rescinding its action adopting the

rule or indirectly by taking any action inconsistent with said rule. The city council is given the power to order the streets of the city improved whenever in the opinion of the city council "the public interest or convenience may require" (sec. 2, Street Improvement Act, 1911), and any rule promulgated by it, which by its terms would entrench upon this power would have no binding effect upon the council. The statute makes no provision for such a petition nor does it authorize the council to promulgate any such rule.

As to the allegations in class 2, it will be observed that the petition of the owners of property fronting on Harris Street, and which it is alleged was approved by the city council, and upon which the resolution of intention was passed, requested the creation of an assessment district, and that the cost and expense of the improvement be assessed according to the benefits derived, the assessment to property on Harris Street not to exceed sixty per cent of the total cost of the improvement. The Improvement Act of 1911 provides two plans by which the cost of improvements incurred thereunder may be paid, one, by assessment against the property according to its frontage on the street improved, and the other by the creation of a district, and the property therein assessed according to the benefits received by each piece of property situated therein. Evidently the signers of said petition desired that the district plan be adopted by the city council in the proceeding which it was proposing to take for the improvement of Harris and other streets in said city, and in the event this plan was adopted they requested that the property of said district be assessed to pay the cost and expense of said improvement according to the benefits derived. They also asked that the assessment against the property fronting upon Harris Street should not exceed sixty per cent of the cost of the improvement. Appellants insist that the city council in approving and granting said petition agreed that the cost of the entire improvement to the property owners on Harris Street should not exceed sixty per cent of the total cost of said improvement and in pursuance of this agreement they passed the resolution of intention, being resolution No. 199. Appellants contend that this agreement on the part of the city council vitiated the resolution of intention and rendered all proceedings of the city council taken thereafter relative to the

said improvement illegal and void. Referring to the copy of the resolution of intention attached to the complaint herein we find it makes no reference to the petition filed by said property owners and contains no agreement or stipulation whatever relative to the amount or to the proportion of the cost and expense of said improvement which said property owners would be required to pay. It does not even provide that the cost of improvement shall be assessed against the property in the district in proportion to the estimated benefits to be received by each of the several lots or parcels therein situated. It does provide, however, for the formation of an assessment district and makes the expense of said improvement chargeable upon the property of said district as provided in section 3 of said act. In all respects it complies with the requirements of said section 3 as to the matters and things which shall be contained in such a resolution of intention. The city council is without any authority at the time of the passage of the resolution of intention or at any other time either before or after the passage of the resolution to agree with any property owner or other person, either that his property shall be assessed in proportion to the benefit it receives from the improvement or that it will bear only sixty per cent or any per cent whatever of the cost of the improvement. The city council can determine that the cost of the improvement shall be chargeable against the property of a district, in which case it becomes the duty of the superintendent of streets, or city engineer, in the event that the last named officer is designated by the city council, to make the assessment and determine the amount each property owner shall pay for said improvement. Any agreement or understanding between the city council and any property owner as to the cost of said improvement would be void and would be without binding effect either upon the city council or upon any official of said city charged with the duty of preparing said assessment. Assuming, therefore, that the allegations of this cause of action in the complaint are to the effect that such an agreement was made by the city council when it approved and adopted said petition of the property owners, such an attempted agreement was beyond the power of the city council to enter into. It did not bind any of the parties thereto and, in our opinion, it could not affect the validity of the

action of the city council in adopting said resolution. The property owners presenting said petition are presumed to know the law, and to know that their property would be liable for the cost of said improvement, in case an assessment district was formed, in proportion to the benefit received therefrom. There is no allegation that the city council acted fraudulently in the matter. On the other hand, the allegations of the complaint show that the petition of these property owners was presented and whatever action thereon was taken by the city council was in open session of the council.

[7] The allegations in class 3 regarding the exemption of public property require but little consideration. They show that the city council acted in pursuance of the provisions of subdivision 8 of section 20 of the statute and that its action in that regard was perfectly legal. In our opinion the facts alleged in the third cause of action were not sufficient to constitute a cause of action and the order sustaining the general demurrer thereto was proper.

[8] *Fourth cause of action:* The ground upon which it is sought to invalidate said proceedings in this cause of action by proper allegations set out therein is that the city council should have acted by ordinance and not by resolution in the proceedings taken by it for the improvement of said streets, and that having attempted to thus proceed by resolution and not by ordinance, such proceedings are without authority of law and are, therefore, illegal.

Section 43 of the charter of the City of Eureka provides that "The Council shall have power to pass ordinances." Then follow sixty-one subdivisions of said section in which is enumerated every conceivable power or authority which the council might by any possibility be called upon to exercise. The first of said subdivisions is: "To establish or alter the grades of, and to open, lay out, alter, extend, close, straighten, widen, or otherwise improve or regulate streets, alleys, lanes, and sidewalks upon the same; determine the width of sidewalks and streets, and the grade of the same, and to provide for acceptance of the streets when constructed and completed in accordance with such regulations as the Council may adopt. Also to open, lay out, construct, alter, widen, extend, repair, and vacate walks, cross-walks, avenues, and thoroughfares in or over any plaza, park,

or grounds belonging to or under the control of said city.'' It is appellants' contention that by this section of the city charter the city council could only enact a valid resolution of intention by the passage of an ordinance adopted with all the formalities required by said city charter for the adoption of ordinances of said city. It is conceded that the resolutions passed by the city council in the proceedings to improve said streets were not adopted as ordinances nor were the charter provisions governing the adoption of ordinances complied with by said city council in the passage of said resolutions. The respondents concede that they proceeded solely under the provisions of the Street Improvement Act of 1911 and claim that they have complied with the terms of said statute in all respects, and that the charter provision above referred to has no application to proceedings taken by the city council under the provisions of said improvement act. The charter of said City of Eureka contains no plan or scheme for the improvement of the streets of said city unless it be held that subdivision 1 of section 43, above quoted, provides for such a plan or scheme. We think a mere reading of said subdivision would indicate that such was not the purpose of the framers of the charter in enacting said subdivision. On the other hand, we think it plainly appears therefrom that this provision of the charter was to govern said city council in its usual and ordinary care over the streets of said city and in the improvement thereof, but does not purport to provide for a general scheme of improvement like that set forth in the Street Improvement Act of 1911 or in similar statutes which have been passed from time to time by our state legislature. Section 191 of said charter provides that all improvements and proceedings not otherwise provided for in the charter shall be taken under and in pursuance of the provisions of the laws of the state applicable thereto in force at the time such improvements and proceedings are taken. Under this section of the charter the appellants concede that the city council might proceed under the Street Improvement Act of 1911 to construct a system of improvements such as are provided for in said act, but that where there is any conflict between said charter and said statute the provisions of the charter are paramount and control the proceedings to be taken by said city council. There can be no question that the im-

provement of the streets of the city is a municipal affair and that where there is a conflict between the city charter and the general law in a merely municipal affair the provisions of the charter control (*Civic Center Assn.* v. *Railroad Com.*, 175 Cal. 441 [166 Pac. 351]; *City of Los Angeles* v. *Central Trust Co.*, 173 Cal. 323 [159 Pac. 1169]). While subdivision 1 of section 43 of the charter of the City of Eureka, as already noted, authorizes the city council by ordinance to improve the streets of said city, it contains no provision for a general plan or scheme of street improvement like or similar to that provided for in the Street Improvement Act of 1911. The Improvement Act of 1911 was, therefore, by said section 191 of the charter, made applicable to the City of Eureka. By its provisions the city council is expressly authorized to proceed in improving the streets of said city in accordance with the plan or scheme provided in said act, and if said act provides that action may be taken by the city council by resolution and not by ordinance, then said city council may proceed in the manner provided by said improvement act. Section 3 of this act provides for the resolution of intention, while section 10 of the act directs that the city council shall pass a resolution ordering the work done, and section 18 provides that the "city council by resolution adopted" may provide that the work shall be done under the direction of the city engineer. It will thus be seen that the three resolutions passed by the city council in the street improvement proceedings before us and concerning which appellants complain were expressly authorized by the Street Improvement Act of 1911, and as the act was made applicable to the City of Eureka by the express provisions of the charter of said city, the action of said council in proceeding by resolution and not by ordinance was in pursuance of the provisions of said charter as well as in accordance with the terms of said act. Such action was, therefore, regular and legal.

Appellants call attention to the fact that the City of Eureka has amended its charter and comes within the purview of section 6, article XI, of the constitution, as amended in 1914. This amendment to the city charter was approved by the legislature in 1917 (Stats. 1917, p. 1743). Therefore, appellants contend that in the manner of enacting ordinances or resolutions or in the manner of improving streets

the council is dealing with municipal affairs and accordingly has the power to make and enforce any and all laws in respect to municipal affairs subject only to the restrictions and limitations of the charter, and furthermore, that the City of Eureka, is not subject to general laws in matters concerning municipal affairs. In the main these contentions of appellants must be conceded and they are to a certain extent sustained by the following authorities cited by appellants: *Civic Center Assn.* v. *Railroad Com., supra; Morgan* v. *City of Los Angeles,* 182 Cal. 301 [187 Pac. 1050]; *Heilbron* v. *Sumner,* 186 Cal. 648 [200 Pac. 409]. The true rule as stated in these authorities is set forth in *Heilbron* v. *Sumner, supra,* page 650, as follows: "As a result thereof (the amending of a city charter so as to come within the terms of the constitution as amended in 1914) the city is not subject to general laws in matters concerning municipal affairs except as the charter itself may provide." We have already seen that the charter of the City of Eureka, by section 191 thereof, has expressly provided that the City of Eureka shall be subject to the general laws of the state applicable to the improvement proceedings in force at the time such improvement proceedings are taken and had. Except for this section of the charter appellants' position would be unassailable, but with this section an integral part of the organic law of the city, its provisions are controlling in the matters set forth therein and bring the City of Eureka within the exception mentioned in the above cases. This disposes of the only point made by appellants in support of the sufficiency of the allegations of the fourth cause of action of said complaint. The demurrer thereto was, therefore, properly sustained.

[9] *Fifth cause of action:* The principal allegation of this cause of action is that the assessment district does not include lots adjacent to and fronting on a street in which a sewer provided for in the improvement proceedings is to be laid for a distance of 590 feet. This objection was not contained in a written protest filed with the city council at or before the meeting when the resolution of intention was passed and, therefore, cannot be now considered. Quoting again from *Duncan* v. *Ramish, supra,* the court says: "It does not appear that any objection was made to the boundaries of the district, and hence it must be held that the

decision of the council as to its extent was correct." Furthermore, this same case lays down the rule (page 696), that: "There is nothing in the law which requires the assessment district fixed by the council to include all the property fronting on the streets. The court cannot say that it might not be possible that some of the property fronting on the streets would not be benefited by the improvement." This section of the sewer, 590 feet in length, may be merely an outfall sewer for the benefit and convenience of the property in the district and may not in any manner benefit the owners of adjoining land fronting on said street. It would, therefore, have been proper for the city council to have excluded the property fronting on the street in which said sewer was laid from the burden of paying for its cost of construction.

*Sixth cause of action:* This cause of action, like the first cause of action, contains merely an allegation upon information and belief that there was included in the work provided for in the resolution of intention private property not deeded to the city nor dedicated to the public as a public street. A special demurrer based upon the same ground as that set forth in the special demurrer to the first cause of action was sustained by the trial court and upon appellants' failure to amend within the time allowed by the court, judgment was entered dismissing said cause of action. There was no error in this action of the court.

[10] *Seventh cause of action:* Appellants apparently have abandoned this cause of action as they make no reference to it in their brief. It consists principally of restatements of objections to said improvement set forth in the previous causes of action and which have been already fully discussed by us in considering the sufficiency of the allegations of said several causes of action.

There was also interposed and sustained by the court a general demurrer to the complaint as a whole. If neither one of the causes of action stated facts sufficient to constitute a cause of action the complaint as a whole would, of course, be subject to a general demurrer. But independent of the sufficiency of the several causes of action the complaint shows upon its face that the appellants are not entitled to the relief prayed for therein. As already stated in the opening of this opinion, the complaint shows that

the city council had initiated proceedings to improve certain streets of the City of Eureka under the Street Improvement Act of 1911 and had passed the three resolutions numbered 199, 1591, and 1592. The last of these resolutions to be passed by the city council was the resolution numbered 1592, passed on the sixth day of April, 1926. The prayer of the complaint is for an injunction enjoining and restraining said defendants, as members of said city council, from doing or performing any acts in their official capacity as the council of Eureka, in further proceeding under said resolutions numbered 199, 1591, and 1592, or in considering bids or in awarding a contract for the construction of said improvement, and for general relief. But it is further alleged in said complaint that the city council on the twenty-seventh day of April, 1926, did by resolution after opening sealed bids for said work, award the contract to do said work to the said defendant, Mercer-Fraser Company, for the price of $218,184.47. In view of this allegation of the complaint the respondents insist that the general demurrer to the complaint was properly sustained as, they contend, it appears from the face of the complaint that the principal if not all of the acts to be performed by said city council, and which it is sought by this action to enjoin and restrain, had prior to the filing of said complaint been performed by the said city council. It will be noted that plaintiffs ask in their complaint that the members of the city council be enjoined and restrained from doing any act under said resolutions "or in considering bids or awarding a contract for the construction" of said improvement, and for general relief. As the complaint shows that the bids were considered and the contract awarded before the commencement of this action, no injunction will lie to prevent the city council from performing either of said acts. "An injunction lies only to prevent threatened injury and has no application to wrongs which have been completed" (*Parkinson* v. *Building Trades Council,* 154 Cal. 581, 602 [21 L. R. A. (N. S.) 550, 98 Pac. 1027]). "The office of a writ of injunction, as its name imports, is peculiarly a preventative and not a remedial one; it is to restrain the wrongdoer, not to punish him after the wrong has been done or to compel him to undo it" (*Stewart* v. *Superior Court,* 100 Cal.

543, 546 [35 Pac. 156]; *Hatch* v. *Raney*, 9 Cal. App. 716 [100 Pac. 886]; *Delger* v. *Johnson*, 44 Cal. 182, 185).

"The point principally urged by appellants is, that it was the duty of the board of trustees, in response to the notice given them by the property owners, to direct the street superintendent to let the contract to them. The work in question was being done under the Improvement Act of April, 1911 (Stats. 1911, p. 730). . . .

"When the board of trustees made its award, its powers and duties in respect of letting the contract ceased. It then became the duty of the superintendent of streets either to cause the contract to be entered into by the original bidder or with the property owners should they elect to take over the work. The statute confers this power and duty upon him, acting, of course, in his official capacity, and it was not necessary for the board of trustees to take further action unless there was a failure on the part of the original bidder to enter into the contract, in which case the city council, under section 13, was directed to 'again advertise for proposals or bids.' The notice given by the property owners to the board of trustees conferred no rights upon them nor did it impose any duty upon the board of trustees." (*Wentland* v. *Clark & Henery Const. Co.*, 37 Cal. App. 34, 37, 38 [173 Pac. 480].)

It is, therefore, apparent that no injunction will lie in this proceeding against the members of the city council to restrain them from doing that which the complaint shows upon its face they have already done. But the prayer of the complaint goes further, or at least attempts to do so, by asking that the city council be enjoined from taking any further proceedings under said resolutions and for general relief. Just what further proceedings said council threaten to take under said resolutions the plaintiffs do not specify in their complaint except that in the seventh cause of action they allege: "that if not stayed by the process of this Court, defendants, as the Council of Eureka aforesaid, now threaten to, and unless restrained by the Court will proceed with the construction of said work, and the creation of an assessment district therefor." As to the creation of an assessment district the Street Improvement Act of 1911, section 4 thereof, provides that this may be done in the resolution of intention and the copy of this resolution passed by

said city council, a copy of which is attached to plaintiffs' complaint, shows that said city council in said resolution created said assessment district, defined its boundaries, and declared the properties within said boundaries to be benefited "by said work and improvements" and to be assessed to pay the cost and expense thereof. The assessment district had, therefore, been created prior to the commencement of this action. As to proceeding with the construction of said work there is little if anything that the city council has to do with the work of said improvement after the award of said contract. The Improvement Act of 1911 provides that after the contract is awarded it then becomes the duty of the superintendent of streets to either cause said contract to be entered into by the original bidder or with the property owners, should they elect to take over the work. From there on the construction work of said improvement is under the exclusive direction and supervision of the superintendent of streets or of the city engineer, in case the city council shall so provide, and in this proceeding the city council by said resolution No. 1592 has directed the work to be done under the supervision of the city engineer, and the city council is without authority over the same except in a few and unimportant respects, and it is not alleged that the city council is either acting or threatening to act in these respects, or in any of them. The general demurrer to the complaint was, therefore, well taken upon this ground, as well as upon the grounds first considered and discussed herein. For these reasons it appears that the judgment should be affirmed, and it is so ordered.

Shenk, J., Preston, J., Waste, C. J., Langdon, J., and Seawell, J., concurred.