No. 14,499.

DENVER BUILDING AND CONSTRUCTION TRADES COUNCIL *v.* VAIL, STATE HIGHWAY ENGINEER.
(86 P. [2d] 267)

Decided December 30, 1938.   Rehearing denied January 9, 1939.

Mr. PHILIP HORNBEIN, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. HENRY E. LUTZ, Assistant, for defendant in error.

Mr. CHARLES D. BROMLEY, amicus curiae.

*En Banc.*

MR. JUSTICE BOUCK delivered the opinion of the court.

THE judgment before us for review comes from the Denver district court, where the plaintiff in error, the Denver Building and Construction Trades Council, was denied an injunction which it prayed for to restrain the defendant in error, Charles D. Vail, the state highway engineer, from opening certain highway construction bids.

In the complaint—a general demurrer to which was sustained—it was alleged that the defendant Vail had invited bids for several contracts to cover state highway construction work falling within the class governed by chapter 124, Session Laws, 1933 ('35 C. S. A., c. 97, §257); that his published invitation to submit bids included what purported to be the prevailing rates of wages for the work required; that the rates were not the prevailing ones; that a dispute has accordingly arisen; and that the question should, under the aforesaid act, be referred to the Industrial Commission of Colorado before the contracts are entered into, in order that the correct prevailing rates of wages may be determined by that body.

The plaintiff in error trades council, according to its complaint, is a voluntary association composed of twenty-three labor organizations, the membership of which consists of mechanics, craftsmen, and skilled and unskilled laborers, who are engaged in the building and construction industry. These twenty-three organizations operate and meet in Denver, are affiliated with the American Federation of Labor, and have united in one council, the plaintiff in error. It and its constituent member organizations were organized and function for the purpose of engaging in collective bargaining with employers and contractors

engaged in the building and construction industry. Among the craftsmen who are members of said labor organizations are skilled engineers, truckmen, carpenters, skilled and unskilled laborers, bricklayers, iron workers, pipe fitters and electricians.

The defendant in error Vail contends, first, that the trades council has no legal standing in court, and, secondly, that no dispute has arisen under the 1933 statute above mentioned.

■ The statute enacts: "That every contract in excess of Five Thousand ($5,000.00) Dollars, in amount, to which the State of Colorado is a party, which requires or involves the employment of laborers or mechanics in the construction, alteration or repair of any highway, building or other public work within the geographical limits of the State of Colorado, shall contain a provision to the effect that the rate of wage for all laborers and mechanics employed by the contractor or any sub-contractor on the highway, building or other public work covered by the contract shall be not less than the prevailing rate of wages for work of a similar nature in the City, Town, Village or other Civil Subdivision of the State in which the highway, building or other public work is located; Provided, That no rate of pay for highway work shall be less than the rate established by the State Highway Department under the authority of the Federal Emergency Relief and Construction Act of 1932; and a further provision that in case any dispute arises as to what are the prevailing rates of wages for work of a similar nature applicable to the contract, which cannot be adjusted by the contracting officer, the matter shall be referred to the Industrial Commission of Colorado, and its decision shall be conclusive on all parties to the contract. Such prevailing rates shall be stated in the invitation for bids and shall be included in proposals or bids for the work."

The evident purpose of the foregoing statute is to avoid the practical disadvantages, delays and losses which the

public, the employers, and the employees naturally suffer by reason of wage controversies that arise during the construction of highways and other public works of the state.

■ The statute having been regularly enacted by the legislative branch of the state government, it is the duty of the judicial branch to give that statute a reasonable meaning.

■■ Since it is therein provided that the prevailing rates of wages shall be incorporated in every state construction contract of the class in question, those rates become an essential element of the contract. The requirement that those rates be also stated in the formal invitation for bids, as well as in the bids for the work, strongly indicates that the General Assembly considered the prescribed rates the very basis for the agreement to be reached by acceptance of a particular bid. If, however, the invitation for bids mentions rates other than the prevailing rates, or if a controversy arises as to whether the rates so mentioned are actually the prevailing rates, it is clear that a failure to decide this question in advance of the formal execution of the contract would inject into the contract the very uncertainty which the lawmakers manifestly sought to prevent. It is likewise clear that such failure would, by delaying settlement of a controversy, tend to interrupt and interfere with the construction work itself.

There seems no doubt whatever that the facts and circumstances set forth show a dispute to have arisen within the reasonable meaning of the above quoted statute. We cannot shut our eyes to the fact that the trades council represents many prospective employees of some of the successful bidders, inasmuch as such construction contracts might, and probably would, involve employment of both union and non-union labor. It is true, as counsel for the defendant in error contend, that there are as yet no workers on these particular highway projects, just as there are at present no contractors with contracts for that

work. However, the General Assembly obviously took the view that it was desirable to ascertain at the very outset the correct amounts of the rates questioned, and that an opportunity for their early determination by the Industrial Commission, as the ultimate and authentic fact-finding body, would tend to save unnecessary cost of time and money, and in addition would supply a solid basis on which intending bidders could understandingly calculate their bids.

■■■ It is conceded that the trades council seeks to be the mouthpiece for union labor in the particular lines of work to be involved in the proposed construction. No single workman who hopes or desires to be employed on one of these projects could be expected to go to the trouble and expense of bringing an action individually. In the light of the practical situation, and in view of the obvious intent of the General Assembly, we hold that the trades council has a sufficient interest in the subject matter to enable it to institute the proceedings in the case at bar. It certainly seems clear that the legislature intended such a dispute to be determined by the Industrial Commission rather than by the administrative officer who, by his preliminary fixing of rates to be inserted in the invitation for bids, has presumably exhausted his own power of research and deliberation in reaching his conclusions. The commission has been created in order to administer the various statutes enacted for the promotion of harmony, efficiency, and justice as between employer and employee. Selection of the commission as the fact-finding body to determine the prevailing rates of wages under the act in question is entirely consonant with the commission's other duties.

■■■ We therefore hold that a "dispute" has arisen in the correct sense of the word as used in the statute, and that therefore the Industrial Commission is vested with the power, and charged with the duty, to take jurisdiction for the purpose of considering all proper evidence that may be presented before it, and of determining therefrom what are the actual prevailing wage rates which are to be

inserted in the invitation for bids, and which will thereby become terms and conditions of the contract itself.

█ Counsel for Vail cite, as authority against the position we take herein, the case entitled In re Rate of Wages on Sewage Disposal Plant (1932), 160 Atl. 408 (not reported in the the state reports, but printed in 10 N. J. Misc. 603). The statute there, while closely similar in other respects, lacks the provision added in our Colorado act, requiring the prevailing rates to be included specifically in the invitation for bids and in the bids themselves. Moreover, in that case the New Jersey Commissioner of Labor (who is designated as the fact-finding agency, corresponding to the Industrial Commission in this state) assumed jurisdiction though he expressly found that no dispute had arisen under the statute. It was properly held that he thereby ousted himself of jurisdiction. That conclusion rendered the further interpretation of the New Jersey act mere dictum.

The other authorities cited by the defendant in error have been carefully examined but have been found to be inapplicable.

The district court's judgment of dismissal must be reversed. In view of the emergency appearing from the record, and stressed in the oral arguments, this court now enters direct judgment here, overruling the demurrer interposed to the complaint and ordering an injunction to issue as prayed.* The case will thereupon be remanded to the district court for the completion of its records.

---

*"Wherefore, Plaintiff prays that * * * injunction may issue * * *, restraining this defendant, his deputies, agents and assistants and all persons working under his authority, from opening or receiving any bids which are submitted to him in accordance with the notices heretofore published, as set forth in this complaint, and from considering any bids which do not provide for the prevailing rate of wages as herein set forth, and from awarding any contract or contracts to any person or corporation whomsoever, unless the prevailing rate of wages is made a part of said contract as by statute required; and further, that the said defendant may be required to refer and submit the dispute existing between this plaintiff and its constituent organizations and membership, and said defendant, as the contracting officer of the State of Colorado for highway construction work, to the Industrial Commission of Colorado for its decision and determination as to what constitutes the prevailing rate of wages in the highway construction industry, * * * and for costs of suit."

Judgment reversed.

M<small>R</small>. C<small>HIEF</small> J<small>USTICE</small> B<small>URKE</small> and M<small>R</small>. J<small>USTICE</small> B<small>AKKE</small> dissent.  M<small>R</small>. J<small>USTICE</small> H<small>OLLAND</small> not participating.