## No. 14,868.

INDUSTRIAL COMMISSION *v.* COLORADO STATE FEDERATION OF LABOR ET AL.

(110 P. [2d] 253)

Decided February 3, 1941.

Mr. Byron G. Rogers, Attorney General, Mr. Philip A. Dergance, Assistant, Mr. Oliver Dean, Assistant, for plaintiff in error.

Mr. Philip Hornbein, Mr. Philip Hornbein, Jr., for defendants in error.

*En Banc.*

Mr. Justice Knous delivered the opinion of the court.

Basically, this controversy developed from the wage scale incorporated in an agreement between the state and the contractor for the construction of a highway underpass beneath certain railroad tracks at 46th

avenue and Vine street in Denver. The pending proceeding was brought in the district court by defendants in error to vacate a finding and award of the Industrial Commission made May 22, 1940, finding: "That the construction of the railroad underpass on Project FAGM - 20 - A - 1, designed by highway engineers solely for highway purposes and in which building architects have no part, constitutes 'highway construction' and that the rates of wages heretofore established by this commission in its findings and award of March 28, 1939, for the first district are applicable thereto." Concluding, in the light of the provisions of section 257, chapter 97, '35 C.S.A., requiring the payment of wages on public construction at not less than the prevailing rate for work of a similar nature, that both parties had proceeded on the erroneous theory that the character of the construction determined the wage scale, the district court recommitted the controversy and remanded the record to the Industrial Commission for a further hearing in accordance with section 42, chapter 97, supra, on the ground that the award did not do substantial justice to the parties. Feeling itself aggrieved by the district court judgment the commission moved for a summary review thereof as provided by section 43, chapter 97, supra. The proceeding in error here came at issue December 11, 1940, and oral arguments were heard on January 7, 1941. In the interim, and previous to the last mentioned dates, the underpass was completely finished; no longer are workmen employed nor wages paid in connection with such construction and with respect thereto nothing is left for the commission to determine. These circumstances obviously make the instant controversy moot and normally a dismissal of the writ of error would follow. However, in view of the public aspect of a dispute of this character, the possibility that such may occur again and in the trust that to some degree the latter may be forestalled thereby, we deem it proper to comment briefly on the matters submitted.

In the "award of March 28, 1939," to which reference is made in the above quoted portion of the award now under consideration, the commission, purportedly in conformity with our decision in *Denver Trades Council v. Vail*, 103 Colo. 364, 86 P. (2d) 267, construing section 257, supra, promulgated "a prevailing wage scale" which it declared should be the minimum wage "for state highway contracts." Previously, on March 31, 1937, the commission had made its finding and award as to the then prevailing rates of wages for public work in the building construction industry.

Advertisements for bids on the project with which we are here concerned were published by the state highway engineer in December, 1939, and January, 1940. Bids were opened January 13, 1940, and the contract was awarded to A. S. Horner on March 15, 1940. Work thereunder began on March 21, 1940. In the invitation for bids, presumably to conform with section 257, supra, the state highway engineer recited "Rates of wages * * * on this contract shall be not less than the prevailing rates of wages for work of a similar nature in the city * * * in which this public work is located, and said minimum rates above designated are deemed to be the present prevailing rates." The specific rates to which reference was made and included in the advertisement were those fixed by the commission "for state highway contracts" under the award of March 28, 1939. The same rates were specified in the contract, and we infer also were stated in the contractor's bid.

Under date of March 25, 1940, Mr. J. A. Brownlow, secretary-treasurer of the State Federation of Labor, addressed a letter to the commission protesting that the rates of wages advertized by the highway department on this project "do not conform to the prevailing rates of wages now in effect in the City and County of Denver nor to the wages established by the Industrial Commission as the result of previous hearings." He further

stated: "There is involved a bridge structure of considerable size on this project which comes under the classification of building construction" for which the commission's own award provided a higher minimum wage than was fixed for the underpass work. The hearings upon which the questioned award was grounded, were later initiated as a result of the Brownlow letter. It is to be observed, as appears from our recital of the facts, that this letter was not submitted until *after* the contract was executed and the work thereunder commenced. In so far as the record discloses, except for a letter setting out informatively the union scale of wages for the crafts he thought would be employed on the project, dispatched by one of the members of the commission to the state highway engineer soon after the first publication of the invitation for bids, no protests of any kind, previous to the Brownlow letter, were made to either the state highway engineer, the contracting officer, or to the commission. To the extent here pertinent, section 257, supra, relating to the rate of wages on public works which all parties agree is controlling in this controversy, provides as follows: "Every contract * * * to which the state of Colorado is a party, which requires or involves the employment of laborers or mechanics in the construction, * * * of any highway, building or other public work within * * * the state * * * shall contain a provision to the effect that the rate of wage for all laborers and mechanics employed by the contractor on the * * * public work covered by the contract shall be not less than the prevailing rate of wages for work of a similar nature in the city * * * in which the * * * work is located; provided, * * *; and a further provision that in case any dispute arises as to what are the prevailing rates of wages for work of a similar nature applicable to the contract, which cannot be adjusted by the contracting officer, the matter shall be referred to the industrial commission * * * and its decision shall be conclusive on all parties to the contract. Such prevailing

rates shall be stated in the invitation for bids and shall be included in proposals or bids for the work."

In *Denver Trades Council v. Vail, supra,* the opinion, inter alia, recites:

"The evident purpose of the foregoing statute is to avoid the practical disadvantages, delays and losses which the public, the employers, and the employees naturally suffer by reason of wage controversies that arise during the construction of highways and other public works of the state.

\* \* \*

"Since it is therein provided that the prevailing rates of wages shall be incorporated in every state construction contract of the class in question, those rates become an essential element of the contract. The requirement that those rates be also stated in the formal invitation for bids, as well as in the bids for the work, strongly indicates that the General Assembly considered the prescribed rates the very basis for the agreement, to be reached by acceptance of a particular bid. If, however, the invitation for bids mentions rates other than the prevailing rates, or if a controversy arises as to whether the rates so mentioned are actually the prevailing rates, it is clear that a failure to decide this question in advance of the formal execution of the contract would inject into the contract the very uncertainty which the lawmakers manifestly sought to prevent. It is likewise clear that such failure would, by delaying settlement of a controversy, tend to interrupt and interfere with the construction work itself. \* \* \* The General Assembly obviously took the view that it was desirable to ascertain at the very outset the correct amounts of the rates questioned, and that an opportunity for their early determination by the Industrial Commission, as the ultimate and authentic fact-finding body, would tend to save unnecessary cost of time and money, and in addition would supply a solid basis on which intending bidders could understandingly calculate their bids."

■ Thus, at least where in conformity with the statute, the invitation for bids in the first instance sets out the specific wage rates which the contracting official deems applicable to the public work proposed, any dispute over what in fact is the prevailing rate of wages applicable thereto must be resolved by the procedure provided in the statute *before* the contract is awarded, and thereby provide a firm wage base for the bidders as well as the workmen to be employed. Obviously, the protest in the controversy before us came too late and the commission was without power to proceed as it attempted.

■■ Further, we are in accord with the trial court in its conclusion that the issue in the hearings held by the commission was wrongly conceived and the resultant award correspondingly vitiated. In the beginning it may be said on behalf of the commission that this misconception, if not suggested by defendants in error, at least was concurred in by them. Following the receipt of the Brownlow letter by the commission there was an exchange of correspondence, as the result of which the notice of the initial hearing fixed the purpose thereof as "determining if part of Project FAGM - 20 - A - 1 does not come under the category of construction work." Consistently, at the outset of the hearing the chairman of the commission announced: "The hearing today is held on the question of whether or not Project FAGM - 20 - A - 1 should be classified as building construction or highway construction work, or whether a part of this Project FAGM - 20 - A - 1 should be classified as building construction work. The hearing therefore will be confined to the determination of this question." Although defendants in error altered their view as the hearings progressed and attempted to show the then prevailing wages for work of a similar character in Denver, the majority of the commission steadfastly adhered to the limitation announced. Thus, upon the premise that one of two wage scales fixed by awards entered

approximately one and two years previously, which were not attacked when announced, was conclusively and exclusively applicable to the underpass project, dependent solely on its structural character, the commission resolved the whole dispute by deciding that the project was "highway construction." Patently, this process was at variance with the statute, which unquestionably contemplates a determination of the prevailing wages for work of a similar nature *at the time of the dispute*. Thus, a wage scale fixed for another project at a considerable time previously cannot properly be relied upon as conclusively establishing present prevailing wages concerning which there is controversy. Each dispute of this character must be determined in the light of the wage scale *then* prevalent for similar work and not otherwise. Previous awards and intervening changes in wage scales in the locality as well as the character of the construction may be pertinent of consideration, but in a situation covered by the statute the ultimate question as to what are the actual prevailing wage rates applicable to a given public work contract must be resolved by the commission from a consideration of evidence as to what is then the prevailing rate of wage for laborers and mechanics performing work of a similar nature in the locality in which the public project is located. These are the criteria of determination fixed by the statute. Because of the moot state of this controversy, as well as the tardy inception of the proceeding and the circumstance that under the limitation imposed upon the scope of the inquiry, the testimony contained in the record predominatingly pertains to the physical characteristics of the project—a subsidiary factor, rather than to the real subject in dispute—this is not the time for us to attempt a definition of the phrase "the prevailing rate of wages" or to suggest a legal formula for the determination thereof. Such must await a proper proceeding and record.

For the reasons assigned the judgment of the district court is affirmed. However, since, as has been pointed out, further hearing before the commission would be both improper and futile, it is ordered that the district court judgment be modified so as to vacate the questioned award of the commission.

MR. JUSTICE BAKKE not participating.

MR. JUSTICE BURKE dissents.

MR. JUSTICE BURKE dissenting.

As correctly pointed out in the court's opinion, the protest in the instant case came too late and the commission was without power to proceed. If so, the district court was equally powerless to enter its judgment and that judgment, therefore, cannot be affirmed.

Again, as correctly pointed out in the opinion, the case is moot. I cannot agree that the reasons assigned justify this judgment. There was nothing before the commission or the district court. Hence there is nothing before us. So believing, I express no opinion on the merits.