EL PASO BUILDING & CONSTRUCTION TRADES COUNCIL v. TEXAS HIGH-WAY COMMISSION et al.

No. 9905.

Court of Civil Appeals of Texas. Austin.

May 17, 1950.

Rehearing Denied June 7, 1950.

534

Mullinax, Wells & Ball, L.N.D. Wells, Jr., Dallas, Creekmore Fath, Austin, for appellant.

Price Daniel, Attorney General, William S. Lott, Ned McDaniel, Clinton Foshee, Assistant Attorneys General, for appellees.

ARCHER, Chief Justice.

Appellant, labor union, brought suit in the 53rd District Court of Travis County against the Texas Highway Commission, the individual members thereof, and the State Highway Engineer, seeking a declaratory judgment that defendants' prevailing wage rate determination in and for El Paso County was substandard, unlawful, and void, and further seeking a mandatory injunction requiring defendants to reconsider and redetermine prevailing wage rates in the El Paso locality as required by Article 5159a, Vernon's Ann. Civ. St.

Temporary restraining order was issued prohibiting execution of contracts for construction of certain highway projects in the El Paso locality, unless such contracts required payment of the true and actually prevailing rate of wages in the El Paso locality.

Defendants thereafter filed plea in abatement and motion to dismiss, and, subject thereto, exceptions and answer.

The trial court, after hearing evidence on plaintiff's application for temporary injunction, granted defendants' oral motion for judgment and rendered judgment denying temporary injunction, sustaining defendants' plea in abatement, and dismissing the suit.

This appeal is based on five points assigned as error by the plaintiff, but may be considered and discussed as two points.

The first point complains of the error of the trial court in sustaining the plea in abatement, on the ground that plaintiff did not have a justiciable interest and standing to bring and maintain the suit.

Article 5159a, V.A.C.S., is long and we do not embody it herein, but it provides that:

"Sec. 1. Not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the work is performed, * * *.

"Sec. 2. The public body awarding any contract for public work on behalf of the State, or on behalf of any county, city and county, city, town, district or other political subdivision thereof, or otherwise undertaking any public work, shall ascertain the general prevailing rate of per diem wages in the locality in which the work is to be performed for each craft or type of workman or mechanic needed to execute the contract, * * *.

"Sec. 3. The contractor and each subcontractor shall keep, or cause to be kept, an accurate record showing the names and occupations of all laborers, workmen and mechanics employed by him, in connection with the said public work, and showing also the actual per diem wages paid to each of such workers, which record shall be open at all reasonable hours to the inspection of the public body awarding the contract, its officers and agents.

"Sec. 4. Any construction or repair work done under contract, and paid for in whole or in part out of public funds, other than work done directly by any public utility company pursuant to order of the Railroad Commission or other public authority, whether or not done under public supervision or direction, or paid for wholly or in

part out of public funds, shall be held to be 'public works' within the meaning of this Act. The term 'locality in which the work is performed' shall be held to mean the county, city and county, city, town, district or other political subdivision of this State in which the building, highway, road, excavation, or other structure, project, development or improvement is situated in all cases in which the contract is awarded by the State, or any public body thereof, and shall be held to mean the limits of the county, city and county, city, town, district or other political subdivisions on whose behalf the contract is awarded in all other cases. The term 'general prevailing rate of per diem wages' shall be the rate determined upon as such rate by the public body awarding the contract, or authorizing the work, whose decision in the matter shall be final. Nothing in this Act, however, shall be construed to prohibit the payment to any laborer, workman or mechanic employed on any public work as aforesaid of more than the said general prevailing rate of wages.

\* \* \* \* \* \*

"Sec. 7. The fact that there is no adequate law protecting laborers, workmen and mechanics engaged in doing and performing work on public works in Texas and its political subdivisions, and the further fact that many contractors are taking advantage of the present industrial and economic condition to beat down wages to a level far below that required to maintain a laborer, workman or mechanic in reasonable circumstances, and the further fact that this condition has created a social problem demanding the immediate attention of the legislative department of our State, create an emergency and an imperative public necessity that the Constitutional Rule requiring that bills be read on three several days be suspended, and said Rule is hereby suspended, and this Act shall be in full force and effect from and after its passage, and it is so enacted."

The plaintiff alleges that it is party to written collective bargaining contracts or oral wage agreements with 93 contractors and subcontractors employing 2,470 workers in the contract construction industry in the El Paso locality. These employers pay rates ranging from 95¢ to $2.50 per hour, depending on the craft classification, and are under written contract or oral agreement to pay not less than these rates. Also, as the mouthpiece of the laboring man in this industry in the El Paso locality, has intense interest in the preservation and improvement of wage standards. Indeed, the very purpose for which plaintiff was organized, its very reason for existing, is to preserve and protect the wage standards and working conditions of laboring men in this locality.

As is to be noted, Section 2 requires that the public body awarding any contract for public work to "ascertain the general prevailing rate of per diem wages in the locality \* \* \* for each craft or type of workman or mechanic needed," and that such wage rate be specified in the call for bids.

The Highway Commission in 1945 declared that the prevailing wage rate on highway construction in El Paso locality to be from 45¢ to $1.37½ per hour, and all contracts so let contained the wage determinations as above.

In the fall of 1949 the Commission let a contract in connection with the Cotton Avenue Overpass in El Paso, and fixed the wage scale at 45¢ to $1.37½ per hour, which, upon protest by the Union, resulted in a labor dispute, and picketing developed. Subsequently, the prevailing rates were raised to 75¢ to $1.65. The Union continued to protest these rates as not being the true prevailing rates.

In December 1949 the Commission invited bids on certain public work called "Main Street Overpass," to be constructed in the City of El Paso, Texas, and in the notice stated that it was a public works project as defined by House Bill No. 54 of the 43rd Legislature, Vernon's Ann.Civ.St. art. 5159a, and House Bill No. 115 of the 44th Legislature, Vernon's Ann.P.C. art. 1580, and as such was subject to the provisions of said bills, and that the wage scale had been ascertained and the rates prevailing in the locality in which the work was to be done. The general rate of per diem wages was declared to be from 45¢ to $1.37 per hour. On

January 3, 1950, the plaintiff by letter protested to the Commission the failure to determine the actual prevailing wage rates in the locality where the Main Street Overpass was to be constructed. On January 6, 1950, the Commission advised the plaintiff's attorneys by wire that a hearing would be had on January 26, 1950. The hearing was had and subsequently the Commission declared the general prevailing wage rate per diem in said locality to be from 75¢ to $1.65 per hour.

The institution of this cause followed and the plaintiff alleged the wage rate declared by defendants was not the prevailing rate within the meaning of Article 5159a, V.A.C.S.; that the determination has no basis in fact; that the general prevailing wage rate was from at least 85¢ to $2.25 per hour; that the said wage rate as determined was as abuse of discretion and unlawful and void, because (1) a single prevailing wage rate determination covered a great number of cities, counties and political subdivisions, including the locality in issue, and did not make a separate and independent determination for each locality as provided in Section 4; (2) that the determination was not based on facts and without relation to wages actually prevailing in El Paso locality; (3) that the defendants ignored data that was relevant, to-wit: the wage determination by the City of El Paso Commissioners Court of El Paso County, the Secretary of Labor, and every other public agency which lets contracts for public work in that locality; the rates presently being paid on highway underpass and bridge construction in the locality; current data available from the Texas Employment Commission; and affidavits from contract construction employers in the El Paso locality, which indicate that three-fourths of the persons employed in construction industry are now actually receiving wages of from ten cents to fifty cents per hour in excess of the Commission's determination.

A temporary restraining order was made by the trial court and hearing fixed, and upon such hearing the court had before it the pleadings, with exhibits attached, and heard the testimony of the witnesses who testified, and upon the close of the plaintiff's case

and before the defendants had offered any direct testimony, the defendants filed their motion for judgment, on the grounds that the plaintiff in the then state of the record had not discharged its burden of proving its case. The court denied the application for a temporary injunction and sustained the defendants' plea in abatement, and dismissed the cause.

As has been indicated above, the right of the plaintiff to bring and maintain this suit is the prime question to be determined by this court. If the plaintiff did not have a justiciable interest and standing to bring and maintain the suit, there was no necessity for the trial court to have refused the temporary injunction, since there were no proper parties before the court, and the order of dismissal would have effectively disposed of the case.

■ The purpose of the enactment of the law was for the benefit of labor and to prevent the beating down of wages to a level far below that required to maintain a laborer, workman or mechanic in reasonable circumstances.

■ We believe that the plaintiff, El Paso Building and Construction Trades Council, seeking to be the mouthpiece for union labor in the El Paso locality, has a sufficient interest in the subject matter to enable it to institute and maintain the proceedings in the instant case.

"We think the intention is clearly apparent from the terms of the contract, relating to the rate and scale of wages to be paid, that such provisions were included for the benefit and protection of the laborers employed in constructing the building. This construction is further fortified by the fact that the United States Department of Labor was a party to the agreement. 'The purpose of the Department of Labor shall be to foster, promote, and develop the welfare of the wage earners of the United States, to improve their working conditions, and to advance their opportunities for profitable employment.' U.S.C.A., title 5, chap. 11, Department of Labor, § 611." Hearn v. Ralph Sollitt & Sons Const. Co., Tex.Civ. App., 93 S.W.2d 551, 556.

Without the right to bring and maintain the suit on behalf of labor the statute would be ineffectual in its requirement that the public body ascertain the prevailing rate, and that such body in the letting of contracts could ignore such duty at its discretion; this it cannot do. Southern Prison Co. v. Rennels, Tex.Civ.App., 110 S.W.2d 606, 607.

In Austin Bridge Co. v. Teague, Tex.Civ. App., 149 S.W.2d 674, at page 676 (reversed on other grounds in 137 Tex. 119, 152 S.W.2d 1091), this court stated that: "Appellants concede that the Act is primarily for the protection and benefit of the laborers and workmen in securing to them payment of the minimum wages prescribed."

In Hearn v. Ralph Sollitt & Sons Const. Co., supra, the court said: "We think the intention is clearly apparent from the terms of the contract, relating to the rate and scale of wages to be paid, that such provisions were included for the benefit and protection of the laborers employed in constructing the building. * * *"

The issue of the right of the Union to maintain this suit has not previously been presented to and determined by one of our courts; the subject has had consideration by courts of some of the other states.

In Denver Bldg. & Construction Trades Council v. Vail, 103 Colo. 364, 86 P.2d 267, 269, the Colorado Supreme Court held: "It is conceded that the Trades Council seeks to be the mouthpiece for union labor in the particular lines of work to be involved in the proposed construction. No single workman who hopes or desires to be employed on one of these projects could be expected to go to the trouble and expense of bringing an action individually. In the light of the practical situation, and in view of the obvious attempt of the General Assembly we hold that the Trades Council has a sufficient interest in the subject matter to enable it to institute the proceedings in the case at bar."

In Southern Prison Co. v. Rennels, Tex. Civ.App., 110 S.W.2d 606, 607, the court held that the statute is especially to protect workmen from being required, if they accept employment, to work for less than the prevailing wage paid in the county for the same class of work, and that (the public body) was not authorized to ignore such power and duty at its discretion to determine the prevailing wage.

In the decision of the U. S. Supreme Court in United Mine Workers of America v. Coronado Coal Co., 259 U.S. 344, at page 385 ff., 42 S.Ct. 570, at page 574 ff., 66 L. Ed. 975, 27 A.L.R. 762, it was held: "Undoubtedly at common law an unincorporated association of persons was not recognized as having any other character than a partnership in whatever was done, and it could only sue or be sued in the names of its members. * * * But the growth and necessities of these great labor organizations have brought affirmative legal recognition of their existence and usefulness and provisions for their protection, which their members have found necessary. * * They have been given distinct and separate representation and the right to appear to represent union interests in statutory arbitrations, and before official labor boards. * * * More than this, equitable procedure adapting itself to modern needs has grown to recognize the need of representation by one person of many, too numerous to sue or to be sued * * *." See U. S. v. White, 1944, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542, 152 A.L.R. 1202.

In Construction and General Labor Union v. Stephenson, Tex.Sup., 225 S.W.2d 958, 961, it was held: "The Court of Civil Appeals undertook to distinguish the Swing case, supra, (Amer. Fed. of Labor v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855) citing Carpenters & Joiners Union of America, Local No. 213 v. Ritter's Cafe, 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143, on the ground that there was no 'interdependence of economic interest' between the petitioners and the Stephenson's employees, emphasizing the facts that house moving is a specialized business, that there was no house movers' union for Stephenson's employees to join, and that Stephenson's employees performed a variety of tasks, many of which were not performed by any members of the picketing unions. Conceding all of this to be true, still we think that the

undisputed facts compel the conclusion that a relation existed between the work which Stephenson's employees were doing at the time of the picketing and the work which the union members were accustomed to perform which would give them a real and substantial economic interest in the work on Stephenson's job. The undisputed evidence shows that the work of erecting the steel trusses was work which members of the iron workers' union were accustomed to do. Other work being done in the erection of the building came within the tasks usually performed by members of the carpenters' and laborers' unions. Moreover, union members were employed by the county on the same job and had to work alongside of Stephenson's employees. We believe, therefore, that it must be concluded that the unions had a legitimate concern with the work done by Stephenson's employees, and that therefore the injunction cannot be sustained on the basis of the absence of such concern."

For an analogy only we wish to call attention to the opinion of the Supreme Court in Hexter Title and Abstract Co. v. Grievance Committee, 142 Tex. 506, 179 S.W.2d 946, 948, 157 A.L.R. 268, where it was held that a grievance committee of the State Bar of Texas for the Fifth Congressional District "has an interest in the subject of the suit peculiar to it" sufficient for an injunction to enjoin the illegal practice of law.

In a very well prepared brief by the Attorney General in behalf of the defendants, we have been cited a number of cases, but which may be distinguished from this case.

In Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 877, 84 L.Ed. 1108, the court said: "This Act's purpose was to impose obligations upon those favored with Government business and to obviate the possibility that any part of our tremendous national expenditures would go to forces tending to depress wages and purchasing power and offending fair social standards of employment. As stated in the Report of the House Committee on the Judiciary on the Bill, 'The object of the bill is to require persons having contracts with the Government to conform to certain labor conditions in the performance of the contracts and

thus to eliminate the practice under which the Government is compelled to deal with sweat shops."

The court further stated: "Respondents have no standing in court to enforce that responsibility or to represent the public's interest in the Secretary's compliance with the Act. That respondents sought to vindicate such a public right or interest is made apparent both by their prayer that the determination be suspended as to the entire steel industry and by the extent of the injunction granted."

And it appears that the decision is based on "the impropriety of judicial interpretations of law at the instance of those who show no more than a mere possible injury to the public."

We believe that the plaintiff in the present case was seeking relief from the action of the public body concerning a matter in which it had a real and legitimate concern and was not seeking to vindicate a public right, and one in which it had no more than a mere possible injury to the public.

We believe that the cases cited are ones in which the plaintiffs sought to interfere with a public right, and were not cases in which the individuals were threatened with some damages peculiar to them, and that individual and personal rights gave them a personal interest in the subject matter. Holt & Co. v. Wheeler Co., Tex.Civ.App., 235 S.W. 226; San Patricio Co. v. Maxwell, Tex.Civ.App., 56 S.W.2d 295; Wilson v. Pierce, Tex.Civ.App., 123 S.W.2d 695.

The trial court was in error in sustaining the plea in abatement.

Appellees have practically, although not actually, staked their entire case upon the point just determined against them, but since the case is to be reversed and further proceedings are quite likely we will, for guidance of the trial court, briefly express our views upon other questions which, as indicated from the record, will arise.

The statute 5159a, supra, provides that the decision of the public body in determining the prevailing rate of per diem wages shall be "final." We do not construe this provision as exempting the action of

the Commission in this regard from judicial review.

The general rule is that the right of appeal to the courts from an order of an administrative board will be implied where such right is not expressly conferred by statute. English Freight Co. v. Knox, Tex. Civ.App., 180 S.W.2d 633 (Austin CCA. Writ Ref. W.O.M.), and cases therein cited.

We are further of the opinion that the substantial evidence rule as applied to orders of the Railroad Commission is the standard by which the validity of order in suit must be measured. See Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424; Hawkins v. Texas Co., 146 Tex. 511, 209 S.W.2d 338.

Since the evidence heard below was only ex parte we cannot know what it will show when fully developed. We do say, however, that if the evidence is substantially the same upon further hearing as it now is, that a temporary injunction preventing the letting of the contract should be granted.

The judgment of the trial court is reversed and this cause remanded for further proceedings not inconsistent with the views expressed in this opinion.

Reversed and remanded.