[Civ. No. 14058.   First Dist., Div. Two.   May 4, 1950.]

ALINE ALLEN et al., Respondents, v. HOTEL AND RESTAURANT EMPLOYEES' INTERNATIONAL ALLIANCE AND BARTENDERS' INTERNATIONAL LEAGUE OF AMERICA (an Unincorporated Association and Labor Union) et al., Defendants; FRANCES HASKINS et al., Appellants.

Todd & Todd for Appellants.

Gladstein, Andersen, Resner & Sawyer for Respondents.

GOODELL, J.—Plaintiffs sued for an injunction and $50,-000 damages, on their own behalf and in a representative capacity for all members of their local union who are similarly situated.   The defendants are Hotel and Restaurant Employees' International Alliance and Bartenders' International League of America, a voluntary, unincorporated association

and labor union, Hugo Ernst, its general president, and four other representatives thereof, including appellants Haskins and Burke. A preliminary injunction was ordered on February 24, 1948, and this appeal was taken from that order.

Plaintiffs sought the injunction because they contended they had been expelled from the International union without due process.

Bartenders and Culinary Workers Union, Local 560, of Vallejo, is a constituent member of the defendant International, and appellants Haskins and Burke are officers and representatives thereof and, at the same time, representatives and agents of the International, also of its general president and of defendant McDonough.

At the time the injunction issued a case was pending in which Joseph Killeen and others were appellants and the same International was a respondent, and five days after it issued that case was decided (*Killeen v. Hotel & Restaurant Emp. Int. Alliance,* 84 Cal.App.2d 87 [190 P.2d 30]). From the opinion therein it appears that there was serious dissension in the Vallejo local, and the International threatened to take charge thereof by putting in a trustee, as authorized by the International's constitution. Anticipating that McDonough, who had been designated as trustee, would take charge of the local, Killeen and others filed suit in the Superior Court in Solano County to permanently enjoin him from doing so. A temporary restraining order was issued in that case. The defendants therein moved to set it aside, and on September 18, 1946, the court did so "on the chief ground that plaintiffs failed to appeal from the decision of the president of the International . . . or to exhaust their remedies" provided by its constitution. On appeal the order dissolving the restraining order and refusing a preliminary injunction was affirmed.

Three of the five plaintiffs in the present case, namely, Allen, Woody and Pohlman were coplaintiffs with Killeen in that case, and their action in so joining with him was used by the International as the basis for one of the charges it preferred, looking to the expulsion of said three members. The principal ground of such charge was that by starting the Killeen suit and getting a restraining order against the International and its trustee they had failed to exhaust their remedies within their own organization, in violation of section 156 of the International's constitution. There were other charges as well against the same three.. Plaintiffs Richards and Cotter, who were not parties to the Killeen suit, were charged with

other claimed offenses. Those five accusations and the International's action thereon gave rise to the present litigation.

The charges against all five members were preferred by defendant McDonough, the International's trustee of the Vallejo local, and were contained in five separate letters dated November 18, 1947 from him to the general president of the International, resident in Cincinnati, specifying the charges. On November 25 the president wrote to each of the five, transmitting a copy of McDonough's letter, and giving them fifteen days within which to answer the president. All of them did so except Woody. On December 30, the president wrote to each of the five saying ''We are adjudging you guilty and penalizing you the amount of $25.00 and expulsion from membership in the International Union.''

The complaint alleges all these facts respecting the expulsions and that the plaintiffs had no hearing; were not confronted with witnesses; that there was no production of evidence; no opportunity to defend themselves; in short that they were expelled without due process. The complaint also alleges that the plaintiffs had lost their employment and had been prevented from obtaining further work, as a result of their expulsions.

The plaintiffs' application for a preliminary injunction was heard on their verified complaint and on a counteraffidavit filed by appellant Frances Haskins. A demurrer and motion to strike out parts of the complaint were also before the court.

The injunction, dated February 24, 1948, opens with self-contradictory language commanding defendants, during the pendency of the action and until the further order of the court, to desist and refrain ''from *doing* or attempting to do any of the following described acts alleged *to have been done* by plaintiffs, or any of them, *prior to December 30, 1947.*'' The emphasis is ours. The defendants were thereby commanded to refrain from doing *something which they had done* almost two months before—December 30 having been the date of the letters of expulsion. Then follow five separate paragraphs reading:

''(1) From interfering in any way whatsoever with the employment or jobs of plaintiffs and each of them, and from prohibiting plaintiffs, or any of them, from working at the culinary trade in any place or places of business wherein said defendant Union and Local Union 560 thereof have jurisdiction, or any other place of business, whether in Vallejo or any

other city or place; *and defendants, and each of them, are further ordered to advise plaintiffs' last employers that plaintiffs are free to work at said establishments without objections by or interference from said defendants, or any of them, or their agents, servants, employees or representatives.* (Emphasis added.)

"(2) From expelling or purporting to expel plaintiffs, or any of them, from the said Hotel & Restaurant Employees' International Alliance and Bartenders' International League of America, or Local Union 560 thereof, or from in any way or by any means whatsoever interfering with the membership of plaintiffs, and each of them, in said Union and Local Union 560 thereof.

"(3) From giving effect in any way or by any means whatsoever to the purported orders of expulsion against plaintiffs, and each of them, by Hugo Ernst, General President, dated December 30, 1947, *and said orders of expulsion for the purposes of this order are hereby declared to be suspended.* (Emphasis added.)

"(4) From interfering with or preventing plaintiffs, and each of them, participating in the business and affairs of the Hotel & Restaurant Employees' International Alliance and Bartenders' International League of America and Local Union 560 thereof, on the same terms and conditions as other members in good standing of said Unions.

"(5) From refusing to accept dues, assessments, or other monies from plaintiffs, and each of them, upon the same terms and conditions as all other members in good standing of Local 560. *The purpose of this provision is to restore plaintiffs to the membership and dues status they enjoyed in said Unions prior to the purported expulsion orders of December 30, 1947, and to protect their property rights and benefits in the Union.*" (Emphasis added.)

The last part of paragraph (1), which we have emphasized, is mandatory, directing the defendants to take affirmative, substantive, action by communicating with plaintiffs' former employers.

Paragraph (2) restrains the expulsions which had been accomplished almost two months before, by the letters of December 30.

The last seventeen words of paragraph (3), which we have emphasized, reach back and expressly suspend the expulsion orders of December 30, 1947.

The last sentence of paragraph (5), which we have empha-

sized, is a frank avowal of an intent to reach back and nullify the actions taken on and prior to December 30, 1947.

The five paragraphs are followed by this general avowal of the purpose for which the injunction was designed:

"The purpose of this preliminary injunction is to place plaintiffs, and each of them, in the same position as they, and each of them, enjoyed prior to the purported expulsion orders of December 30, 1947, that is to say, that plaintiffs, and each of them, are restored to the status of membership in good standing they enjoyed and possessed prior to said date."

"As a general rule," it is said in 14 California Jurisprudence, page 209, "an injunction lies only to prevent threatened injury and has no application to wrongs which have been completed, for the redress of which a party is relegated to an action at law. Clearly, such wrongs cannot be corrected by a temporary injunction, the usual purpose of which is to preserve conditions as they are until after trial and judgment, although the facts may be such as to entitle the complainant to permanent relief."

In *Blackmore Investment Co.* v. *Johnson,* 213 Cal. 148, 150-1 [1 P.2d 978], the court said "it is elementary that an injunction cannot be granted to stay an act already committed . . ." In *Blake* v. *City of Eureka,* 201 Cal. 643, 661 [258 P. 945], the court said: " 'An injunction lies only to prevent threatened injury and has no application to wrongs which have been completed' (*Parkinson* v. *Building Trades Council,* 154 Cal. 581, 602 [21 L.R.A.N.S. 550, 98 P. 1027].) 'The office of a writ of injunction, as its name imports, is peculiarly a preventive and not a remedial one; it is to restrain the wrongdoer, not to punish him after the wrong has been done or to compel him to undo it' (*Stewart* v. *Superior Court,* 100 Cal. 543, 546 [35 P. 156]; *Hatch* v. *Raney,* 9 Cal.App. 716 [100 P. 886]; *Delger* v. *Johnson,* 44 Cal. 182, 185)."

In *J. F. Parkinson Co.* v. *Building Trades Council,* 154 Cal. 581, at 602 [98 P. 1027, 21 L.R.A.N.S. 550], the court said:

"But even if it could be held that the action of the council in sending the notices was without justification and malicious, something would still be wanting to sustain the injunction. The notices had all been sent before this action was commenced, and there was no evidence of any threat to send notice to any other persons. An injunction lies only to prevent threatened injury and has no application to wrongs which have been completed, and for which the injured party may

obtain redress by an action at law." Here, likewise, "The notices had all been sent before this action was commenced."

See, also, *Hannah* v. *Pogue*, 23 Cal.2d 849, 858 [147 P.2d 572], which cites, *inter alia, Thome* v. *Honcut Dredging Co.*, 43 Cal.App.2d 737 [111 P.2d 368]. In the Thome case it is said "An injunction should issue for wrongful acts which have been completely performed, when it appears they are likely to be repeated or continued. [Citations.] When the act complained of has been fully performed, the injured party is ordinarily compelled to seek redress in a suit for damages. To authorize the issuing of an injunction it should appear with reasonable certainty that the wrongful acts will be continued or repeated."

█ It cannot be said that because the plaintiffs sued as representatives of other members of Local 560 who might later be dealt with by the International as it had dealt with the five plaintiffs, the injunction was within the recurrence exception since the court's minute order directing the injunction to issue shows that it was granted *only in favor of the five named plaintiffs.*

In *Miller & Lux* v. *Madera Canal etc. Co.*, 155 Cal. 59, 62-3 [99 P. 502, 22 L.R.A.N.S. 391], it was said: "The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the rights claimed by him. When the cause is finally tried, it may be found that the facts require a decision against the party prevailing on the preliminary application."

Counsel for respondents state their position very clearly when they say: "The trial court put respondents back into the position they occupied in the unions prior to the illegal expulsion."

Whatever might be done later on by a final judgment, it is clear that the court could not, *by this preliminary injunction,* mandate the defendants to "advise plaintiffs' last employers that plaintiffs are free to work" for them, nor could it declare a suspension of the expulsion orders which had been made almost two months before, nor restore plaintiffs "to the status of membership in good standing they enjoyed and possessed" prior to December 30, 1947, without violating the settled rules of all these cases.

Counsel on both sides have argued this case, not on the

grounds already discussed, but on grounds which might be appropriately presented on the trial. Appellants contend that the order should be reversed because the complaint does not allege that the plaintiffs exhausted their intra-union remedies before applying to the civil courts, relying, in that behalf, on the Killeen case, *supra*. Respondents contend that their allegations of a disregard by defendants of their own rules and laws, and of a complete denial of due process, excuse, and obviate the necessity for, any allegation showing that they had exhausted their intra-union remedies, relying in that behalf chiefly on *Ellis* v. *American Federation of Labor*, 48 Cal.App.2d 440 [120 P.2d 79]. This question need not be decided at this time.

As far as the five named plaintiffs are concerned—and the minute order shows that the injunction does not go beyond *them*—we are satisfied that the following part of paragraph numbered (1) was proper and should stand, to wit:

"(1) From interfering in any way whatsoever with the employment or jobs of plaintiffs, and each of them, and from prohibiting plaintiffs, or any of them, from working at the culinary trade in any place or places of business wherein said defendant Union and Local Union 560 thereof have jurisdiction, or any other place of business, whether in Vallejo or any other city or place."

We are satisfied that the mandatory part of the same paragraph (1), emphasized by us in our first quotation thereof, together with all the remaining provisions of the injunction, cannot be sustained as a proper exercise of discretion.

Accordingly the order is affirmed respecting said part of paragraph numbered (1) last quoted above, and reversed as to the said mandatory part of paragraph (1), also reversed as to all of paragraphs numbered (2), (3), (4) and (5), and as to the declarations and orders contained in the paragraph immediately following paragraph (5) commencing with the words "The purpose of this preliminary injunction."

The motion of respondents to present additional evidence is dismissed. Each side to pay its own costs of appeal.

Nourse, P. J., concurred.

DOOLING, J.—I concur. It is not necessary to hold that in no event can a court issue a mandatory temporary injunction. I take the correct rule to be that stated in *Hagen* v. *Beth*, 118 Cal. 330, 331 [50 P. 425]:

"The granting of a mandatory injunction pending the trial, and before the rights of the parties in the subject matter which the injunction is designed to affect have been definitely ascertained by the chancellor, is not permitted except in extreme cases where the right thereto is clearly established and it appears that irreparable injury will flow from its refusal." (See 43 C.J.S. 412-413; 28 Am.Jur. 214.) The application of this rule to the facts of this case is all that is necessary to support our order.